IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN BRODAK, CORAL BRODAK, and BRODAK MANUFACTURING AND DISTRIBUTING, INC. | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 06-146<br>Judge David S. Cercone<br>Magistrate Judge Lisa Pupo Lenihan |
| GEORGE T. McCLAIN and RANDI GIFFORD | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

## I. RECOMMENDATION

It is respectfully recommended that the Motions to Dismiss of Defendants George T. McClain and Randi Gifford be granted and that Plaintiff's case be dismissed in its entirety owing to collateral estoppel as to *in personam* jurisdiction.

## II. REPORT

Plaintiffs John Brodak; his spouse, Carol Brodak, (hereafter collectively "the Individual Plaintiffs"); and their corporation, Brodak Manufacturing and Distributing, Inc. (hereafter

collectively "the Brodaks" or "Plaintiffs"), filed their twelve-count Complaint in the instant action seeking redress for injury alleged to arise from May 14, 2005 telephone calls between the Individual Plaintiffs and McClain, and the subsequent publication of the substance of those conversations. This federal court action was preceded by Plaintiff's similar action filed against the same Defendants in the Court of Common Pleas of Greene County, Pennsylvania on September 13, 2005 (the "State Court Action"). In response to Preliminary Objections, the State Court considered the question of personal jurisdiction at that time and dismissed the case on December 20, 2005, concluding that personal jurisdiction was lacking.[1] Because collateral estoppel thereby arises with respect to personal jurisdiction in this Court, it is recommended that the case be dismissed. In view of the disposition of the case on this basis, although Defendants raise numerous objections that are well taken, it is unnecessary to further expend this Court's time to address the infirmities of the counts asserted.

**A. Statement of Facts**

As more fully set forth in the pleadings, the Individual Plaintiffs are residents of Green County, Pennsylvania, and owners of a Pennsylvania Corporation which manufactures and distributes "control line airplanes".[2] Defendant McClain is a resident of Arlington County, Virginia; Defendant Gifford is a resident of Clinton County, Iowa.

---

1. See Brief in Support of Motion to Dismiss Plaintiff's Complaint filed by Defendant Gifford ("Gifford's BSMD"), Exhibits 2 & 3 (State Court Complaint and Memorandum and Order, respectively).

2. Complaint at ¶ 3.

John Brodak, McClain and Gifford are members of a non-profit club for control line airplane enthusiasts known as Precision Aerobatics Model Pilots Association (hereinafter "PAMPA").[3] Commencing on or about January 1, 2004, John Brodak began an elected two-year term as President of PAMPA. In April, 2005, proposed by-law amendments drafted primarily by John Brodak were submitted for a general membership vote and defeated. PAMPA's by-laws (and/or a resolution enacted prior to the vote, the "Brickhaus Resolution") required that the votes be tabulated by PAMPA's parent organization, the Academy of Model Aeronautics (the "AMA"), and published in the "next issue" of "Stunt News", the club's "periodic newsletter".[4]

On May 14, 2005, McClain telephoned - from his Virginia residence - the Brodak residence in Pennsylvania and asked to speak with John Brodak, who was reportedly not at home. At Coral Brodak's invitation to leave a message, McClain stated: "Please tell him that if he does not publish the results of the By-laws vote within the hour, I will do so. If he wants to talk to me, he can call me back." [5]

Approximately ten minutes later, Brodak - from his residence in Pennsylvania - telephoned McClain at his residence in Virginia. McClain reiterated his "threat" to publish the

---

3. According to its by-laws, PAMPA is "recognized by the Academy of Model Aeronautics as the Special Interest Group representing Control Line Precision Aerobatics enthusiasts on a national and international basis." Id. at Exhibit A (PAMPA Bylaws), Article II.

4. Id. at ¶¶ 16-18; Exhibit A at Article V, VII. See also Memorandum in Support of Motion to Dismiss Filed on Behalf of Defendant George T. McClain ("McClain's MSMD") at 3 (discussing Brickhaus Resolution).

5. Id. at ¶ 19. McClain asserts that he made this call because he had received a certified copy of the by-law vote results from PAMPA Secretary/Treasurer, Shareen Fancher, and that he and Gifford were then discussing their belief that publication was required by the Brickhaus Resolution to have been made to the Executive Committee *and* its at-large membership simultaneously. See McClain's MSMD at 3.

results of the membership's by-law vote on the "Stuka Stunt" website,[6] and John Brodak "reminded" McClain that such publication (occurring prior to publication in Stunt News) would be in violation of the by-laws.

Subsequently, McClain published a "transcript" of his telephone conversations with Coral and John Brodak via an e-mail posted on the Stuka Stunt website. McClain reported therein that PAMPA member Defendant Gifford, from her residence in Iowa, "listened in" to those conversations and, as a "practicing stenographer", took shorthand notes of the conversations.[7] McClain also reported he held the mouthpiece of his residence telephone to his cellphone during those conversations to enable Gifford to hear. As a result of the publication of those telephone conversations, Plaintiffs allege that John Brodak and the corporation "have become the target of numerous and lengthy e-mails on the Stuka Stunt website" making personal attacks on John Brodak.[8] Plaintiffs further allege that their corporation has "suffered losses" and "become the target of a boycott of its products".[9] They allege damages to the Individual Defendants such as

---

6. Id. at ¶ 20. The Stuka Stunt website is apparently a forum (or "bulletin board" or "chat site") utilized by individuals involved in the principally-recreational activity of flying "control line" model airplanes.

7. Id. at ¶¶ 21, referring to the alleged "transcript", also more accurately identified as "McClain's description", as Exhibit B. See *infra*, note 10.

8. Id. at ¶ 27, citing copies of these e-mails as Exhibit C.

9. Id. at ¶ 28. The Court notes that neither these allegations nor those in the text at note 8 appear to be supported by the few posting exchanges attached as Exhibit C to the Complaint. Indeed, three of the four and one-half pages attached are comprised of citations to and quotations from various state wiretapping laws, clearly directed against Defendant McClain. No mention whatsoever of the Brodak's business appears in the attachments.

violation of privacy, inconvenience, embarrassment, emotional distress and psychological damage.[10]

Before this Court, Plaintiffs assert subject matter jurisdiction under the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510, and "supplemental jurisdiction [under] 28 U.S.C. § 1367 based on Pennsylvania's Wiretapping and Electronic Surveillance Control Act (18 Pa.C.S.A. § 5701 *et seq.*)".[11] Plaintiffs' creative twelve-count Complaint, filed on February 2, 2006, alleges violation of these Acts, as well as violation of the Racketeering Influence and Corruption Organizations Act ("RICO") of the Organized Crime Act Law of 1970, 18 U.S.C.

---

10. Exhibit B to Plaintiff's Complaint - Defendant McClain's e-mail to the Stuka Stunt website bulletin board consists of a less than one-half page description of McClain's brief telephone call to the Brodak residence and the telephone call he received from John Brodak shortly thereafter (reported therein to have last 41 seconds). The Court notes that Plaintiffs' allegations to the contrary notwithstanding, the e-mail is not a "transcript".

McClain's posting first complains that Brodak had forbidden members of the Executive Committee from publishing voting results prior to the "next issue of Stunt News." It then reports that McClain telephoned the Brodaks and was remembered by Coral Brodak; and it repeats in quotation marks (the only use of direct quotation in the posting) the message left by McClain. It reports that when John Brodak returned the call, he indicated results would be released in the next issue and publication before hand would be in violation of the by-laws. It reports McClain's response to Brodak, contending that under the Brickhaus Resolution, results were to be certified by the AMA and published to the Executive Committee and the general membership simultaneously. It reports that when Brodak again refused to published, McClain said he would put them on "SSW" (presumably the Stuka Stunt Website). The posting also reports that Gifford listened in on both conversations as aforesaid. Finally, it accuses Brodak of using "profanity" describing McClain's lineage and states that Gifford "has a verbatim transcript of [the profanity]". Plaintiffs have not asserted that any portion of McClain's account is false.

11. Id. at ¶¶ 6-7.

§1984;[12] defamation; slander; libel; conspiracy;[13] invasion of privacy; intentional infliction of emotional distress; interference with contractual relationship;[14] and false light.

Presently before this Court are Defendants' Motions to Dismiss for a litany of reasons, including the absence of personal jurisdiction and collateral estoppel with respect to that threshold issue.

**B. Motion to Dismiss Standard**

The Court considering a motion to dismiss "must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).[15] Moreover, a motion to dismiss for failure to state a claim may be granted only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. See, *e.g.*, Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001); Jakomas v. McFalls, 229 F.Supp.2d 412, 419 (W.D. Pa. 2002) ("Dismissal of claims is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim upon which relief may be granted.").

---

12. Id. at Count Five (alleging no less than "a pattern of racketeering activities which the Defendants engaged in connection with its operations in wiretapping, liable and slander").

13. Id. at Count Seven (alleging acting in concert to, among other things, "defraud [Individual Defendants] of their right to privacy" and "besmirch . . . the reputation" of the corporation's products).

14. Id. at Count Eleven (alleging that McClain's e-mail publication of the telephone conversations caused a boycott of the corporation's products).

15. See also Jordan v. Fox, 20 F.3d 1250, 1261 (3d Cir. 1994) (stating that in determining whether claim should be dismissed under Rule 12(b)(6) "court looks . . . to the facts alleged in the complaint and its attachments").

**C. Analysis**

1. Collateral Estoppel as to Personal Jurisdiction

As noted by the Defendants, federal district courts have personal jurisdiction over non-resident defendants to the extent authorized under the law of the forum state in which the district court sits - in this case, Pennsylvania. See Fed. R. Civ. P. 4(e); Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 481 (3d Cir. 1993). In other words, this Court's personal jurisdiction over the Defendants is governed by the law of the Commonwealth of Pennsylvania. The relevant doctrine clearly prohibits this Court from extending an exercise of specific personal jurisdiction beyond the Commonwealth's reach.

In this case, the State Court has considered the precise issue of personal jurisdiction over Defendants under essentially identical factual circumstances[16] and has concluded that, under Pennsylvania's long-arm rule, such jurisdiction does not obtain.

Collateral estoppel, or issue preclusion, forecloses "the relitigation of an issue that has been put in issue and directly determined adversely to the party against whom the estoppel is asserted." Melikian v. Corradetti, 791 F.2d 274, 277 (3d Cir. 1986). Although the doctrine of collateral estoppel is generally discussed as applying after a final judgment on the merits, it may also be applicable to orders finding a lack of personal jurisdiction. See, *e.g.*, Compagnie DesBauxites de Guinee v. L'Union Atlantique S.A. d'Assurances, 723 F.2d 357, 361 (3d Cir. 1983);[17] Karibjanian v. Chromalloy Pharmaceutical, Inc., 1991WL 125176 (E.D. Pa. 1991)

---

16. No new or different facts are alleged in the federal complaint which would impact the Court's determination of personal jurisdiction.

17. Although the Compagnie Dex Bauxites Court rejected the application of *res judicata* or
(continued...)

(concluding plaintiff was collaterally estopped from raising personal jurisdiction in federal court where Commonwealth court had previously decided issue in favor of defendants); id. at *2 (noting that, for collateral estoppel to apply, "'[a]ll that is necessary is that the party against whom collateral estoppel is asserted had the opportunity to present his arguments and evidence on the issue and that the court which entertained these presentations was authorized to resolve the issue and to consider all of the matters put before it'") (quoting Calesnick v. Redevelopment Auth., No. 83-0498 (E.D. Pa. July 26, 1985) (Pollak, J.)).[18]

The Court disagrees with Plaintiffs' assertions - appearing toward the end of their 35-page Brief in Opposition to Defendant McClain's Motion to Dismiss ("Plaintiff's Brief in Opposition") - that collateral estoppel may not be applied to a case dismissed prior to adjudication on the merits of the substantive causes of action. See Plaintiff's Brief in Opposition at 29-31 (citing cases which did not address a question of personal jurisdiction or similar "threshold" issue and/or were otherwise inapposite); id. (citing the non-preclusive effect of judgments based on "rules of procedure" or, *e.g.*, *non pros*); id. at 31 (citing Restatement, Judgments § 49, comment a (1942) (simply illustrating its definition of a judgment on the merits)).

To the contrary, the State Court's disposition of the jurisdictional issue should be binding upon this Court. For "[w]hile a decision that a court lacks personal jurisdiction over a party will

---

17. (...continued)
collateral estoppel to the case before it, the decision recognized that the latter doctrine may apply to personal jurisdiction. See 723 F.2d at 360-61.

18. See also, *e.g.* Deckert v. Wachovia Student Financial Services, 963 F.2d 816, 817 (5th Cir. 1992); Kendall v. Overseas Development Corp., 700 F.2d 536, 538 (9th Cir. 1983); 1B Moore's Federal Practice ¶ 0.405[5] at III-46-48.

not bar the litigation of the merits of a claim against such party in a court of competent jurisdiction, the [State] Court's determination that it lacks personal jurisdiction over [a d]efendant bars the relitigation of the jurisdictional issue in [the Federal District Court within that State]." Kitces v. Wood, 917 F.Supp. 338, 341 (D.N.J. 1996) (concluding, as a matter of first impression, that collateral estoppel foreclosed prosecution in federal district court of action dismissed by state court for lack of personal jurisdiction).[19] Cf. Baldwin v. Iowa State Traveling Men's Assoc., 283 U.S. 522 (1931) (explaining that, in contrast to *res judicata*, a judgment for lack of personal jurisdiction is considered to have been "necessarily decided" for collateral estoppel purposes); Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979) (explaining that collateral estoppel applies once an issue is actually and necessarily determined by a court of competent jurisdiction).

---

19. See also id. at 342-43 (further explaining that, in keep with principles of comity and the Full Faith and Credit Act, the State Court's determination that it lacked personal jurisdiction must be given the same preclusive effect in the Federal District Court that it would have in a subsequent State Court action); id. (noting that federal courts to address this issue are in agreement). Cf. 18 Wright and Miller, *Federal Practice and Procedure* § 4430 (2d ed. 1987) (noting that "a ruling against personal jurisdiction is also binding by way of issue preclusion so long as the same legal standards apply to basically unchanged facts").

While the Kitces Court notes that the Third Circuit had not had occasion to expressly address this issue, the Circuit's subsequent discussion in Saudi v. Acomarit Maritimes Services, S.A., 114 Fed. Appx. 449 (3d Cir. 2004), is informative. In Saudi, the Circuit distinguishes *res judicata* from collateral estoppel and suggests that, where the state court has issued a valid judgment as to personal jurisdiction , the latter would apply. See id. (declining to rule on the question because the District Court did not specifically address it, counsel's argument focused on claim preclusion, and plaintiff could not prevail on the merits). See also id. (quoting Matosantos Commercial Corp.v. Applebees Int'l, Inc., 245 F.3d 1203, 1209 (10th Cir. 2001), which held that "[a]lthough the dismissal for lack of personal jurisdiction in the Puerto Rico district court does not have *res judicata* effect, it does have collateral estoppel effect, preventing relitigation of issues decided in thePuerto Rico district court").

2. Absence of Specific Personal Jurisdiction

Although this Report concludes that collateral estoppel applies, the Court further notes that, in the absence of a prior determination by the State Court, it would independently conclude that it lacks specific personal jurisdiction. McClain's telephone call to Pennsylvania, during which he left a message for Brodak, is far too attentuated a basis for personal jurisdiction. And Brodak's telephone call to Virginia, during which McClain is alleged to have - in Virginia - provided audio access to Gifford, advances that basis but little further. Similarly, Gifford's listing to telephone calls - made by others from Virginia to Pennsylvania and then, more substantively, from Pennsylvania to Virginia - at her residence in Iowa is, without more, an insufficient basis for subjection to personal jurisdiction in Pennsylvania.[20]

---

20. The Court is in full agreement with the well-reasoned Memorandum Opinion issued by the Commonwealth Court. See Gifford's BSMD, Ex. 3 (concluding that "Defendants could not have reasonably anticipated being sued in Pennsylvania" and "did nothing that could be construed as availing themselves of the privilege of conducting activities within Pennsylvania").

The permissible extent of the Commonwealth's exercise of specific personal jurisdiction over a non-resident defendant is measured against both its "long-arm statute" and the due process clause of the Fourteenth Amendment. See, *e.g.*, Filipovich v. J.T. Imports, Inc., 637 A.2d 314, 316 (Pa. Super. 1994). For an exercise of specific personal jurisdiction to pass constitutional muster, the defendant's contacts with the state must be such that he could "reasonably anticipate being haled into court" and, similarly, such that the exercise of jurisdiction does not violate "traditional notions of fair play and substantial justice." See International Shoe v. Washington, 326 U.S. 310, 316 (1945); Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985); Kubik v. Letteri, 614 A.2d 1110 (Pa. 1992). More particularly, "random, fortuitous and attenuated contacts" are insufficient; rather, a defendant "must have purposefully directed [his] activities to the forum and conducted [himself] in a manner indicating that [he] has availed [himself] of the forum's privileges and benefits such that [he] should also be subjected to the forum state's laws and regulations." Aventis Pasteur, Inc. v. Alden Surgical Co., 858 A.2d 996, 999-1000 (Pa. Super. 2004). See also Brennan v. Walt Disney Productions, Inc., 1986 WL 9488, *2 (E.D. Pa. 1986) (observing that consideration of specific jurisdiction "entails a determination of whether the cause of action arose from the defendant's forum-related activities") (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 256 (1980)).

(continued...)

## III. CONCLUSION

In closing, this Court feels compelled to caution Plaintiffs with respect to frivolous or vexatious conduct.[21] It further notes that parties once subject to inappropriate litigation become even more entitled to protection from further prosecution. And it reminds Plaintiffs of the existence and purpose of Rule 11.[22]

---

20. (...continued)

In addition, as Defendants note, the Pennsylvania Courts have previously concluded that telephone contacts alone are insufficient to confer personal jurisdiction over a non-resident defendant. See, *e.g.*, Ball v. Ehlig, 70 Pa. D&C 4th 160 (Montgomery County 2005) (concluding lack of personal jurisdiction over Texas residents alleged to have recorded telephone conversations with Pennsylvania residents in violation of Pennsylvania wiretapping laws); id. (holding occasional telephone and e-mail contact insufficient). Cf. Burns v. Lavender Hill Herb Farm, Inc., 271 F.Supp.647, 648 (E.D. Pa. 2003) (concluding phone calls, faxes and mailing into Commonwealth insufficient).

Finally, and relatedly, in civil wiretapping cases, the Pennsylvania Courts have consistently considered the conflicts of law problems implicated if the state in which the alleged illegal conduct occurred (*i.e.*, where the illegal interception took place or unlawful recording was made) has more permissive laws. Cf., *e.g.*, Larrison v. Larrison, 750 A.2d 895, 898 (Pa. Super. 2000) ("While this Commonwealth has an interest in protecting its citizens from having telephone conversations recorded without proper consent, we, as the courts of this Commonwealth, have no power to control the activities that occur within a sister state.").

21. Cf. Complaint at Exhibit C (printouts of Stuka Stunt website postings), posting of PAMPA member DMoon ("It is pretty petty and sad if you really think about it. We all got into flying CL planes because it was fun. We joined PAMPA to be part of a group that loves and supports CLPAA."); McClain's Brief in Reply to Plaintiff's Brief in Opposition at 1-2 (characterizing case as "a tempest in a teapot").

22. Cf. McClain's Brief in Reply at 5 (expressing concern that Plaintiffs might again file an action in yet another court of law).

For the reasons set forth above, it is recommended that the case be dismissed in its entirety owing to collateral estoppel as to *in personam* jurisdiction.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

/s/ Lisa Pupo Lenihan
LISA PUPO LENIHAN
United States Magistrate Judge

Dated: December 1, 2006

cc: Hon. David S. Cercone
United States District Court Judge

All Counsel of Record